# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

№ 21-CV-01163 (RER)

---

ROBBIN GOURLEY

VERSUS

MICHAEL YARMACK, *ET AL.*

---

**MEMORANDUM & ORDER**

August 31, 2023

---

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff Robbin Gourley ("Plaintiff") commenced this action on March 4, 2022, against Michael Yarmack ("Yarmack") and Emilia Valencia ("Valencia") (collectively, "Defendants"), alleging negligence arising out of a slip and fall that occurred on Defendants' property. (ECF No. 1 ("Compl.")).[1] Currently before the Court is Defendants' Motion for Summary Judgment (ECF No. 23 ("Defs Mot.")), which Plaintiff opposes (ECF No. 24 ("Pls Opp. Mot.")). After carefully reviewing the record, for the reasons set forth below, the Motion is denied.

## BACKGROUND

I.    Local Civil Rule 56.1

Local Civil Rule 56.1 requires that upon moving for summary judgment, a party must provide "a separate, short and concise statement, *in numbered paragraphs*, of the material facts as to which the moving party contends there is no genuine issue to be tried." Loc. Civ. R. 56.1(a) (emphasis

---

[1] The parties have consented to the jurisdiction of the Court pursuant to 28 U.S.C. § 636(c). (ECF No. 10).

added). In response, "[t]he papers opposing a motion for summary judgment shall include a *correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party*[.]" Loc. Civ. R. 56.1(b) (emphasis added).

Both Plaintiff and Defendants failed to comply with Rule 56.1. Specifically, Defendants' Rule 56.1 statement does not contain *numbered* paragraphs. (*See* ECF No. 23-2 at 27–33 ("Defs 56.1")). And while Plaintiff's response to Defendants' Rule 56.1 statement does include numbered paragraphs, the paragraphs do not correspond to those in Defendants' statement. (*See* ECF No. 24-3 ("Pls 56.1 Resp.")). For example, in the tenth paragraph of her statement, Plaintiff "[a]dmits and states that the width of the staircase was too wide for a person to reach both the left and right handrails at the same time." (*Id.* ¶ 10). This paragraph does not appear to correspond to the tenth (albeit unnumbered) paragraph in Defendants' statement, which describes introductory facts pertaining to Yarmack. (Defs 56.1 at 30). The parties' combined violations has resulted in a lack of clarity as to which facts are disputed and undisputed. The Court need not expend judicial resources parsing through each line of the Rule 56.1 submissions, *see Mayaguez S.A. v. Citibank, N.A.*, No. 16 Civ. 6788 (PGG) (JLC), 2022 WL 901627, at *8–9 (S.D.N.Y. Mar. 25, 2022), although it could not make sense of them if it tried. Instead, the Court briefly summarizes the following facts as they appear throughout the parties' briefing and the record as a whole.

II.     Factual Background

This case arises out of a slip and fall that occurred on the front steps of Defendants' Brooklyn home on December 18, 2019. (ECF No. 23-2 ("Defs Mem.") at 1; ECF No. 24-4 ("Pls Opp.") at 1). Plaintiff and her husband, Jeffrey Stern, were paying guests at Defendants' home, an apartment, during their visit to New York. (Defs Mem. at 2; Pls 56.1 Resp. ¶ 3). They had stayed at the apartment on two prior visits. (*Id.*). On the date of the incident, Plaintiff and her husband left

Defendants' apartment at about 1 P.M. to attend a Broadway show. (Defs Mem. at 3; Pls Opp. at 2). Both Plaintiff's and Defendants' expert meteorologists opine that it had not snowed up to this point in the day, and there was no snow or ice on the ground. (ECF No. 23-11 ("Defs Exp. Aff.") ¶ 8; ECF No. 26 ("Pls Exp. Aff.") ¶ 55). Plaintiff and her husband left the theater to return to Defendants' apartment at about 4:05 P.M. (Defs Mem. at 3; Pls Opp. at 2).

Back in Brooklyn, sometime in the afternoon, Yarmack received a weather alert on his telephone regarding impending snowfall. (Defs Mem. at 5; Pls Opp. at 4). He first became aware that snow had fallen at approximately 4 P.M. (*id.*), and estimated that it continued to fall until "about 5:30 or so." (Defs Mem. at 5; *see also* Pls Opp. at 5). It is unclear from the record if or when Yarmack salted or shoveled the front steps in front of his home that afternoon. (Defs Mem. at 4–5; Pls Opp. at 4–5).

Plaintiff returned from the show to Defendants' apartment at 5:15 P.M. (Defs Mem. at 4; Pls Mot. at 3). As she approached the apartment, Plaintiff observed snow covering the front steps. (*Id.*). Plaintiff and her husband stayed at the apartment for about thirty to forty minutes before heading out for dinner. (*Id.*). Upon leaving the apartment again, while descending the front steps at approximately 5:45 P.M., Plaintiff fell. (*Id.*). When asked how the incident occurred, Plaintiff testified: "Descending the steps, and the second to last step my right foot fell out, slipped out and I fell on my left side on my wrist; took all my weight on the left side." (Defs Mem., Ex. D at 57:19– 24).

With respect to the weather conditions on the date of the incident, Plaintiff's and Defendants' expert meteorologists agree that snow fell "continuous[ly]," "steadily," and/or "occasionally" from about 4:16/4:20 P.M. through 5:05/5:08 P.M., and then from about 5:05/5:14 P.M. through 5:35 P.M. (Defs Exp. Aff. ¶ 8; Pls Exp. Aff. ¶ 55). Defendants' expert opines that more snow fell

"intermittently" between about 7:50 P.M. and 10:10 P.M. (Defs Exp. Aff. ¶ 8), while Plaintiff's

expert opines that the brief "snow squall" stopped for the day at 5:35 P.M. (Pls Exp. Aff. ¶ 55).

Departing slightly from both expert reports, Plaintiff (as well as her husband and son) asserts that

"snow fall in Brooklyn had ceased approximately [forty] [to] [forty-five] minutes before

[P]laintiff's injury." (Pls Opp. at 3–4). Notably, Plaintiff and Defendants, as well as experts on

each side, agree that a trace (less than 0.1 inch) amount of snow and ice cover was present on the

ground at the time of the incident, and that a trace amount of snow fell on December 18, 2019.

(Defs Mem. at 8; Pls Opp. at 6–7).

III.   Procedural History

Plaintiff filed the Complaint on March 4, 2021 (Compl.), alleging that her injuries were

proximately caused by Defendants' "carelessness, recklessness, and negligence . . . in causing and

creating the [hazardous] condition, and in permitting and allowing [the] same to continue and exist

unabated for a lengthy and unreasonable period of time prior to the [incident]." (Compl. ¶ 34).

Plaintiff further alleges that Defendants "had actual and constructive notice" of the condition. (*Id.*).

After some discovery, on January 1, 2022, the Court held a Final Pretrial Conference during which

Defendants stated their intention to move for summary judgment. (Minute Entry dated 1/13/2023).

On April 19, 2022, Defendants filed the fully briefed Motion.

**LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute

as to material fact exists if a reasonable jury could return a verdict for the nonmoving party.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In deciding a motion for summary

judgment, the court must "constru[e] the evidence in the light most favorable to the nonmoving

party and draw[] all reasonable inferences in that party's favor." *Kuebel v. Black & Decker Inc*., 643 F.3d 352, 358 (2d Cir. 2011) (citing *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact[.]" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial." *McFarlane v. Harry's Nurses Registry*, No. 17-CV-06350 (PKC) (PK), 2020 WL 1643781, at *4 (E.D.N.Y. Apr. 2, 2020) (citing *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009)). To do so, the nonmoving party may not rely on "[a] mere 'scintilla of evidence'" but "'must come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (first quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003), then quoting *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002)); *see also Garcia v. Saigon Mkt. LLC*, No. 15 Civ. 9433 (VSB), 2019 WL 4640260, at *3 (S.D.N.Y. Sept. 24, 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) ("To defeat a summary judgment motion, the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'")

To satisfy their respective burdens, the parties may rely upon "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Where the non-movant will ultimately bear the burden of proof at trial, he must present evidence to support the essential elements of his claims." *Hristova v. 3321 Astoria Inc.*, No. 17-CV-1633 (RER), 2018 WL 4006880, at *3 (E.D.N.Y. June 27, 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Absent evidence supporting the non-movant's claims, judgment should be entered for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). But "[i]f the evidence is such that a 'jury

could reasonably find for the nonmovant,' the motion must be denied." *Id.* (quoting *Anderson*, 477 U.S. at 252).

**DISCUSSION**

To establish a prima facie case of negligence under New York law, "a plaintiff must demonstrate '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty, and (3) injury to the plaintiff as a result thereof.'" *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 210 (2d Cir. 2014) (quoting *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013) and *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981)). "To make out a premises liability case, the plaintiff must show that there was a dangerous or defective condition that caused the accident, and that 'the [defendant] either created the defective condition, or had actual or constructive notice thereof.'" *Moy v. Target Corp.*, 629 F. Supp. 3d 205, 209–10 (S.D.N.Y. 2022) (quoting *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008)).

Defendants do not contest that they had notice of a potentially hazardous condition. (*See* Defs 56.1 at 30 (Yarmack was aware of snowfall on the date of the incident)). Rather, Defendants seek to invoke the "storm-in-progress doctrine," which provides that "a property owner will not be held responsible for accidents occurring as a result of the accumulation of snow and ice on its premises until an adequate period of time has passed following the cessation of the storm to allow the owner an opportunity to ameliorate the hazards caused by the storm." *Bachir v. Costco Wholesale Corp.*, No. 19-CV-2834 (JMA) (AKT), 2021 WL 4463290, at *4 (E.D.N.Y. Sept. 29, 2021) (quoting *Fisher v. Kasten*, 124 A.D.3d 714, 715 (2d Dep't 2015)) (*see also* Defs Mem. at 20–25). Defendants additionally seek dismissal of Plaintiff's claim that inadequate lighting on Defendants' premises proximately caused her accident. (Defs Mem. at 25–26). Defendants argue that because

6

Plaintiff's husband "admitted that the exterior lighting, which illuminated the subject staircase, was operational and functioning as intended," the inadequate lighting allegation cannot stand. (*Id.* at 26). For the reasons set forth below, Defendants have not established that they are entitled to judgment as a matter of law, and the Motion is denied.

I.   Defendants May Not Invoke the Storm-in-Progress Doctrine

Defendants argue that the Complaint should be dismissed as a matter of law pursuant to the storm-in-progress doctrine (Defs Mem. at 20–25), which provides that "a landowner's obligation to take reasonable measures to correct storm-created snow and ice conditions does not commence until after the storm has ceased." *Hall v. United States*, No. 18-CV-49, 2020 WL 759045, at *4 (N.D.N.Y. Feb. 14, 2020). At the summary judgment stage, a defendant asserting the storm-in-progress doctrine must show "prima facie entitlement to judgment based on that defense and, if that burden is met, the opponent of the motion must come forward with competent, admissible evidence, establishing the existence of a triable issue of fact." *Sanders v. Wal-Mart Stores, Inc.*, 9 A.D.3d 595 (3d Dep't 2004). Then, "the burden shifts to the plaintiff to raise a triable issue of fact as to either: (1) the existence of the storm; or (2) the existence of a slippery condition prior to the storm at the location where the plaintiff fell, and that the defendant had actual or constructive notice of the pre-existing condition." *Hall*, 2020 WL 759045, at *4.

Defendants argue that the evidence presented thus far "irrefutably establishes that a winter storm began shortly before the occurrence of Plaintiff's accident and continued through and beyond the time of the alleged accident." (Defs Mem. at 20). The parties all agree that *some* snow fell on the date of the incident. (Defs Mem. at 3, 10; Pls Opp. at 2–3). The parties also agree that *no* snow fell at the exact time of the incident. (Defs Mem. at 13–14; Pls Opp. at 9). Both Plaintiff's and Defendants' expert meteorologists opine that snow stopped falling about ten minutes before

Plaintiff's fall[2] (Defs Exp. Aff. ¶ 8; Pls Exp. Aff. ¶ 55), although Plaintiff and her husband assert that the snow stopped falling about forty to forty-five minutes before Plaintiff's fall (Pls Opp. at 3–4). In any event, even accepting Plaintiff's and her husband's version, forty to forty-five minutes is not a reasonable amount of time following the cessation of snowfall to allow Defendants to remedy the allegedly hazardous condition. *See Sherman v. New York State Thruway Auth.*, 27 N.Y.3d 1019, 1020 (2016) ("A landowner will not be held liable in negligence for injuries sustained as the result of an icy condition occurring during an ongoing storm or for a *reasonable time* thereafter.") (emphasis added); *see also, e.g.*, *Lanos v. Cronheim*, 77 A.D.3d 631, 632 (2d Dep't 2010) (two hours did not give defendants a "reasonable opportunity after the snowfall ended to correct the hazard"); *Barresi v. Putnam Hosp. Ctr.*, 71 A.D.3d 811, 812 (2d Dep't 2010) (one hour did not provide defendant a reasonable opportunity to ameliorate condition); *Russo v. 40 Garden St. Partners*, 6 A.D.3d 420, 421 (2d Dep't 2004) (fifty minutes did not provide a "reasonable opportunity after the precipitation ended to take protective measures").

Nevertheless, the storm-in-progress doctrine does not apply where only a trace amount of snow is present. *See, e.g., Bodoff v. Cedarhurst Park Corp.*, 213 A.D.3d 802, 803 (2d Dep't 2023) (storm-in-progress doctrine not available where "only trace amounts of precipitation, totaling less than one-tenth of an inch" fell on the date of the incident); *Haraburda v. City of New York*, 168 A.D.3d 485, 486 (1st Dep't 2019) (storm-in-progress doctrine not available where "there was no storm but rather only trace amounts of snow").[3] This is because if only a trace amount of snow fell

---

[2] Defendants and their expert meteorologist characterize the cessation of snow at this point as a "temporary break" or a "lull" in precipitation that continued periodically throughout the rest of the evening. (Defs Mem. at 10, 17).

[3] Defendants point to a handful of New York state cases to support his argument that "even 'trace' amounts of snow can and routinely do constitute sufficient evidence of an active storm in progress." (ECF No. 25-1 ("Defs Reply") ¶ 30; *see also id.* ¶¶ 27–29, 31–32, 34). However, each of these cases is distinguishable from the one at hand. For example, in *Griguts v. Alpin Haus Ski Shop, Inc.*, there was "roughly 2 ½ inches" of snow at the time of plaintiff's fall, rather than the less than 0.1 inch present here. 150 A.D.3d 1438, 1439 (3d Dep't 2017). Similarly, in *Grinnell v.*

prior to Plaintiff accident, "then it is reasonable to ask whether the custodian should have been shoveling the accumulated snow." *Powell v. MLG Hillside Assocs., L.P.*, 290 A.D.2d 345 (1st Dep't 2002). In other words, if no storm was in progress, then Defendants had no reason to "wait out" the weather conditions before remedying the hazardous condition. All parties agree that a trace amount of snow and ice cover was present on the ground at the time of the incident, and that a trace amount of snow fell on the date of the incident. (Defs Mem. at 8; Pls Opp. at 6–7). Therefore, Defendants have not established that they may invoke the storm-in-progress doctrine as a defense to Plaintiff's claims. Accordingly, Defendants' Motion with respect to the storm-in-progress doctrine is denied.

## II.   The Inadequate Lighting Claim Involves a Genuine Issue of Material Fact

Defendants argue that Plaintiff's claim of inadequate lighting is "unsupported" and must be dismissed. (Defs Mem. at 25). To the extent Plaintiff's allegation of inadequate lighting constitutes a distinct claim, it should not be dismissed. Both Plaintiff and her husband have provided sworn statements that it was dark outside at the time of the incident, and that the area where Plaintiff fell was not well lit. (ECF No. 24-1 ("Gourley Aff.") ¶ 37; ECF No. 24-2 ("Stern Aff.") ¶ 36–37). Plaintiff specifically asserts that the exterior lighting "did not illuminate the bottom of the staircase" where Plaintiff fell. (Pls Opp. at 15). Defendants offer nothing to refute this testimony,

---

*Phil Rose Apartments*, "about one inch" of snow had accumulated at the time of plaintiff's fall. 60 A.D.3d 1256, 1256–57 (3d Dep't 2009). In *Abaya v. City of New York*, the First Department likewise rejected plaintiff's "characterization of the meteorological evidence as showing only 'trace amounts' of snow" where "about half an inch" of fresh snow had accumulated. 257 A.D.2d 446, 446–47 (1st Dep't 1999). In *Ross v. Lewis*, although it was snowing in trace amounts in the early morning of plaintiff's fall, it was snowing in "more than trace amounts until 11 p.m." the night prior, and so the storm-in-progress doctrine applied. 181 A.D.3d 423, 424 (1st Dep't 2020). Finally, in *Giron v. New York City Haus. Autll.*, the court applied the storm-in-progress doctrine where, unlike here, "the actual temperature and precipitation readings documented in the other climatological records, [and] the affidavit of the supervisor of caretakers show[ed] that an 'ice storm' was occurring in the area . . . before and during plaintiff's accident." 187 A.D.3d 603, 603 (1st Dep't 2020). Accordingly, the case law Defendants cite towards this point is inapposite.

aside from stating that the exterior lighting "was operational and functioning as intended." (Defs Mem. at 26).

Defendants point to two New York state cases to support their argument that Plaintiff's evidence as to inadequate lighting is insufficient to create an issue of fact. (*See* Defs Mem. at 25 (citing *Christoforou v. Lown*, 120 A.D.2d 387 (1986) and *Wright v. S. Nassau Communities Hosp.*, 254 A.D.2d 277 (1998)). These cases do not move the needle. In *Christoforou*, the defendant provided *specific* evidence, namely through testimony of the premise's superintendent, to rebut the plaintiff's testimony that the lighting of defendant's premises was inadequate. 120 A.D.2d at 389 (e.g., "the area [of the incident] was lighted by three overhead fixtures, which contained a total of approximately 125 watts"; within 10 feet of the [incident] is a ceiling fixture containing a 40-watt fluorescent bulb"; "during the 27 years he had been superintendent, he had never received a complaint about the lighting conditions, which had remained the same throughout that period"). Similarly, in *Wright*, the defendant offered "*detailed* testimony . . . regarding [the] actual lighting in [the] parking lot" that directly refuted the plaintiff's claims. 254 A.D.2d at 277 (emphasis added). Here, Plaintiff's and her husband's statements that the vestibule light did not illuminate the bottom of the staircase are essentially unrebutted. Defendants offer no evidence to establish that the exterior lighting, even if operational and functioning as intended, reached the bottom of the staircase where Plaintiff fell. Viewing this evidence in the light most favorable to the nonmovant, Plaintiff has raised an issue of fact regarding whether inadequate lighting was a proximate cause of her injuries. *See Touri v. Zhagui*, No. 06 Civ. 00776 (SCR) (JFK), 2010 WL 779335, at *5 (S.D.N.Y. Mar. 5, 2010) ("To the extent that the parties disagree over [whether the alleged inadequate lighting] ultimately caused Plaintiff's injuries[,] . . . the question of proximate

cause is properly left for the jury to decide."). Therefore, Defendants' Motion with respect to the claim of inadequate lighting is denied.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion for Summary Judgment is denied.

**SO ORDERED.**

Hon. Ramon E. Reyes, Jr.   Digitally signed by Hon. Ramon E. Reyes, Jr.
                           Date: 2023.08.31 18:09:38 -04'00'

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: August 31, 2023
Brooklyn, NY